UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| KRISTAL FREEMAN, individually and on behalf of all others similarly situated, | § § § | |
| Plaintiff, | § § § | |
| VS. | § § | CIVIL ACTION NO. 3:16–CV–00356 |
| PROGRESS RESIDENTIAL PROPERTY MANGER, LLC, | § § § § | |
| Defendant. | § § | |

## MEMORANDUM OPINION AND ORDER

Pending before this Court is Plaintiffs' Motion for FLSA Conditional Certification and Class Notice under 29 U.S.C. § 216(b) ("Motion"). Dkt. 50. The Motion has been referred to this Court. Dkt. 58. This Court has authority to enter this order pursuant to 28 U.S.C. § 636(b)(1)(A). *See, e.g., Esparza v. C&J Energy Servs., Inc.*, No. 5:15–CV–850–DAE, 2016 WL 1737147, at *1 (W.D. Tex. May 2, 2016) (noting conditional certification involves non–dispositive issues); *Wedel v. Vaughn Energy Servs., LLC*, No. 2:15–CV–93, 2015 WL 5920034, at *1 (S.D. Tex. Oct. 6, 2015) (same).

Having considered the parties' briefing, the applicable legal authorities and all matters of record, the Court GRANTS the Motion.

### I. BACKGROUND

Progress Residential Property Manager, LLC ("Progress") is one of the largest providers of single family rental homes in the United States, with properties available

across the country. Progress's corporate office is located in Scottsdale, Arizona, with regional offices serving the greater metropolitan areas of Atlanta, Charlotte, Dallas, Houston, Indianapolis, Jacksonville, Las Vegas, Memphis, Miami, Nashville, Orlando, Phoenix, Raleigh, Sarasota, and Tampa.

Plaintiff Kristal Freeman ("Freeman") brought this lawsuit against Progress for alleged violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, on behalf of herself and similarly situated "onsite leasing agents."[1] Freeman claims that Progress required Freeman and other onsite leasing agents nationwide to work in excess of 40 hours per workweek without any overtime compensation. Two additional former Progress employees, Theresa Sands ("Sands") and Nature Carney–Francis ("Carney–Francis"), have filed Notices of Consent, opting–into the case. Plaintiffs seek conditional certification of all of Progress's current and former onsite leasing agents so that they can provide nationwide notice of this lawsuit.

In support of their Motion, Plaintiffs have submitted declarations stating that they worked for Progress as onsite leasing agents in either the Greater Houston and/or Dallas areas. Freeman says she worked for Progress from June 2016 through October 2016; Sands claims she worked for Progress from November 2015 through November 2016; and Carney–Francis contends she worked for Progress from November 2014 to July 2016. Progress acknowledges that Freeman, Sands and Carney–Francis all worked as

---

[1] Freeman defines "onsite leasing agents" as "any individual with the job title of leasing specialist, leasing agent, or any similar title who performed similar duties of the Plaintiffs and was classified by Defendant as an exempt employee under the FLSA ...."

2

onsite leasing agents, but disputes the exact dates Carney–Francis worked for the company.

The one thing the parties agree on is that the primary function of an onsite leasing agent is to sell leases for single family homes. Other than that, the parties fundamentally disagree about the role of onsite leasing agents. Plaintiffs contend that onsite leasing agents were required to perform a great deal of paperwork each day and spend several hours each day on the telephone. Plaintiffs further claim that all onsite leasing agents routinely worked in excess of 40 hours per week, including working through lunch, before and after regular business hours and on weekends. According to Plaintiffs, all onsite leasing agents were paid on a salary plus commission basis with no overtime pay, with Progress misclassifying onsite leasing agents as exempt under the FLSA. Importantly, Plaintiffs contend that onsite leasing agents at Progress performed the same or similar job duties at all of Progress's locations.

Progress, on the other hand, claims that the onsite leasing agent position has changed considerably over time, with onsite leasing agents today spending much more time tracking performance and managing sales with mobile systems than those onsite leasing agents employed prior to 2017. Progress notes that the company moved from paper applications to online applications in late 2015, meaning that onsite leasing agents today spend much less time on paperwork than their colleagues did a few years ago. Progress also argues that the assignment of homes has changed over time within the Houston market, resulting in onsite leasing agents today spending less time in the homes to make sales than their counterparts from a few years ago. Finally, Progress contends

3

that, starting in 2017, the company rolled out its "Let Yourself In" option by which prospects can register online and gain access to a rental property without being accompanied by an onsite leasing agent. According to Progress, this means that the job functions of onsite leasing agents today varies considerably from the job functions of onsite leasing agents a few years ago when onsite leasing agents spent a significant amount of time showing rental properties.

## II. APPLICABLE LAW

The FLSA provides that an employee may file a lawsuit for unpaid overtime wages on behalf of herself as well as other similarly situated employees who opt–in to the suit. 29 U.S.C. § 216(b). Actions pursued in such a representative capacity are referred to as "collective actions." Notice to potential plaintiffs does not issue unless a court conditionally certifies the case as a collective action. *See Hoffmann–La Roche Inc. v. Sperling*, 493 U.S. 165, 170–71 (1989). Whether to certify a suit as a collective action under the FLSA is a decision committed to the discretion of the court. *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213 (5th Cir. 1995).

"Courts use two methods to decide whether to authorize notice to similarly situated employees advising them of their opt–in rights: the two–step *Lusardi* approach and the Rule 23 class–action–based *Shushan* approach." *Austin v. Onward, LLC*, 161 F. Supp. 3d 457, 461 (S.D. Tex. 2015) (citing *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987); *Shushan v. Univ. of Colo. at Boulder*, 132 F.R.D. 263 (D. Colo. 1990)). Although the Fifth Circuit has declined to specifically adopt either test to determine when a court should certify a collective action or grant notice in a FLSA action, both the United

4

States Supreme Court and the Fifth Circuit have made statements implying that a Rule 23—type analysis is incompatible with FLSA collective actions. *See Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 74 (2013) ("Rule 23 actions are fundamentally different from collective actions under the FLSA"); *Donovan v. Univ. of Tex. at El Paso*, 643 F.2d 1201, 1206 (5th Cir. 1981) ("The FLSA procedure, in effect, constitutes a congressionally developed alternative to the [Rule 23] procedures").

Importantly, most federal courts in this District have adopted the *Lusardi* test. *See e.g., Ridley v. Regency Vill., Inc.*, No. H–17–974, 2018 WL 1334813, at *5–6 (S.D. Tex. Mar. 15, 2018) (Miller, J.); *Williams v. Guardian Living Servs., Inc.*, No. 4:17–CV–1901, 2018 WL 1251927, at *1–2 (S.D. Tex. Mar. 12, 2018) (Ellison, J.); *Harlow v. Legend Energy Servs., LLC*, No. 4:16–CV–02324, 2017 WL 4856775, at *1 (S.D. Tex. Oct. 26, 2017) (Harmon, J.); *Hernandez v. Robert Dering Constr., LLC*, 191 F. Supp. 3d 675, 679–80 (S.D. Tex. 2016) (Hanks, J.); *Heeg v. Adams Harris, Inc.*, 907 F. Supp. 2d 856, 860–61 (S.D. Tex. 2012) (Rosenthal, J.). This Court will, therefore, apply the two–step *Lusardi* test.

The two stages of the *Lusardi* test are the "notice stage" and the "decertification stage." *See Mooney*, 54 F.3d at 1213–14. At the notice stage, the court determines whether to grant conditional certification and issue notice to potential members of the putative collective class. *Id.* In other words, the Court conducts an initial inquiry into "whether the putative class members' claims are sufficiently similar to merit sending notice of the action to possible members of the class." *Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 519 (5th Cir. 2010) (citation omitted). Courts usually base

5

this decision upon "the pleadings and any affidavits [that] have been submitted ...." *Mooney*, 54 F.3d at 1214. Because of the limited evidence available at this stage, "this determination is made using a fairly lenient standard, and typically results in 'conditional certification' of a representative class." *Id.* In fact, courts "appear to require nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Id.* at 1214 n.8 (quoting *Sperling v. Hoffmann-La Roche, Inc.*, 118 F.R.D. 392, 407 (D.N.J.)). If the court conditionally certifies the class, putative class members are given notice and the opportunity to opt in. *Id.* at 1214. The case then proceeds through discovery as a representative action. *Id.*

At the notice stage, the plaintiff bears the burden of making a preliminary factual showing that a similarly situated group of potential plaintiffs exists. *Id.* To establish this, the plaintiff must generally make a minimal showing that: "(1) there is a reasonable basis for crediting the assertion that aggrieved individuals exist" and "(2) those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted ...." *Maynor v. Dow Chem. Co.*, No. G-07-0504, 2008 WL 2220394, at *6 (S.D. Tex. May 28, 2008) (citing *Prater v. Commerce Equities Mgmt. Co.*, No. H-07-2349, 2007 WL 4146714, at *4 (S.D. Tex. Nov. 19, 2007)). The Courts in this District are divided as to whether plaintiffs are required to present evidence supporting a third element: that other individuals want to opt into the lawsuit.[2] At no point during the

---

[2] *Compare Ridley*, 2018 WL 1334813, at *6 (Miller, J.) (applying third element); *Heeg*, 907 F. Supp. 2d at 861 (Rosenthal, J.) (same) and *Tolentino v. C & J Spec-Rent Servs. Inc.*, 716 F. Supp. 2d 642, 647 (S.D. Tex. 2010) (Jack, J.) (same) *with Williams*, 2018 WL 1251927, at *2 (Ellison, J.) (declining to apply the third element); *Hernandez v. Robert Dering Constr., LLC*,

6

conditional certification stage should a court look to the merits of the lawsuit's allegations. *Vaughan v. Document Grp., Inc.*, 250 F. Supp. 3d 236, 239 (S.D. Tex. 2017).

The second step of *Lusardi* is triggered if a defendant files a motion for decertification, after the close of discovery. *Mooney*, 54 F.3d at 1214. "At this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question. If the claimants are similarly situated, the district court allows the representative action to proceed to trial. If the claimants are not similarly situated, the district court decertifies the class, and the opt–in plaintiffs are dismissed without prejudice. The class representatives—i.e., the original plaintiffs—proceed to trial on their individual claims." *Id.*

### III. DISCUSSION

#### A. THE PROPER STANDARD OF REVIEW

Although courts generally are quite lenient in determining whether to conditionally certify a class at the notice stage, Progress insists that this Court should impose a more exacting standard of review because this case "has been pending for several months and the parties have engaged in discovery[.]"

Although this case has been on file 16 months and, apparently, some, minimal discovery has been undertaken by the parties, there is no question that discovery is far from complete. *See Franklin v. HCA Mgmt. Servs., L.P.*, No. 3:15–CV–3194–L–BK,

---

191 F. Supp. 3d 675, 681 (S.D. Tex. 2016 (Hanks, J.) (same); *Jones v. Cretic Energy Servs., LLC*, 149 F. Supp. 3d 761, 768 (S.D. Tex. 2015) (Lake, J.) (same) and *Dreyer v. Baker Hughes Oilfield Operations, Inc.*, No. H–08–1212, 2008 WL 5204149, at *3 (S.D. Tex. Dec. 11, 2008) (Smith, J.) (same).

2016 WL 7744407, at *3 (N.D. Tex. Dec. 19, 2016) ("The applicable evidentiary standard [for a motion for conditional certification] is relative to the quantity of evidence before the court, not simply the amount of time that has elapsed since the case was filed."). Here, not a single deposition had been taken as of late February 2018 when the briefing on this Motion concluded—despite the fact that the parties indicated in the Joint Discovery/Case Management Plan submitted at the outset of this case that they fully expected to take multiple depositions, including, at a minimum, all the Plaintiffs and a corporate representative from Progress. As Judge Richard Farrer in the Western District of Texas aptly stated: "The lack of any deposition testimony where multiple depositions are anticipated strongly indicates ... that insufficient discovery has been conducted to justify applying an intermediate evidentiary standard." *Alverson v. BL Rest. Operations LLC*, No. 5–16–CV–00849–OLG–RBF, 2017 WL 5491998, at *4 (W.D. Tex. Nov. 15, 2017) (collecting authorities). Furthermore, per the terms of the Docket Control Order: discovery does not end until September 2018—more than five months from today; and the expert report deadline has not yet passed. "The fact that some discovery has been conducted does not increase the plaintiffs' burden at this first, conditional certification stage to the more onerous standard that applies at the second, decertification stage. That standard is only appropriate 'after discovery is largely complete and the matter is ready for trial.'" *McKnight v. D. Hous., Inc.*, 756 F. Supp. 2d 794, 802–03 (S.D. Tex. 2010) (quoting *Mooney*, 54 F.3d at 1214).

Because this is certainly not a case where discovery is complete and the matter is ready for trial, the Court does not believe Plaintiffs should be held to a higher standard of review.

**B.    CONDITIONAL CERTIFICATION IS PROPER**

As noted above, a plaintiff seeking to obtain conditional certification must make a minimal showing that: "(1) there is a reasonable basis for crediting the assertion that aggrieved individuals exist; [and] (2) those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted ...." *Maynor*, 2008 WL 2220394, at *6. Some courts impose a third requirement on plaintiffs seeking conditional certification: they must show that there are individuals who want to opt in to the lawsuit. The Court will evaluate the request for conditional certification in light of each of these three factors.

### 1. Whether Aggrieved Individuals Exist

Plaintiffs "need only show that it is reasonable to believe that there are other aggrieved employees who were subject to an allegedly unlawful policy or plan." *Austin*, 161 F. Supp. 3d at 464 (quotations marks and citation omitted). To do so, Plaintiffs must, at a minimum, identify other employees who were subject to the same policy or plan. *Id.* Here, in addition to Freeman, two other individuals—Sands and Carney–Francis—have opted into the suit. Carney–Francis has submitted a declaration stating that she worked as an onsite leasing agent in Houston and Dallas, and attests to the similar job duties and compensation of Progress's leasing agents outside the Houston area. Moreover, Progress readily acknowledges that it employs onsite real estate agents across the country to assist

9

the company in leasing single-family homes. As a result, the Court finds Plaintiffs have provided more than sufficient proof that other aggrieved individuals exist, especially since Plaintiffs' burden is so low at this stage. *See Heeg*, 907 F. Supp. 2d. at 862.

## 2. Whether the Aggrieved Individuals are Similarly Situated to Plaintiffs

To obtain conditional certification, Plaintiffs must show that "those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted." *Maynor*, 2008 WL 2220394, at *6. However, "[s]imilarly situated does not necessarily mean identically situated." *Jaso v. Bulldog Connection Specialists LLC*, No. 2:15–CV–269, 2015 WL 11144603, at *4 (S.D. Tex. Oct. 15, 2015) (quoting *England v. New Century Fin. Corp.*, 370 F. Supp. 2d 504, 507 (M.D. La. 2005)). *See also Falcon v. Starbucks Corp.*, 580 F.Supp.2d 528, 534 (S.D. Tex. 2008) ("Courts have repeatedly stressed that Plaintiffs must only be similarly—not identically—situated to proceed collectively"). Instead, the relevant inquiry is whether Plaintiffs have sufficiently shown that other current and former Progress employees "were together the victims of a single decision, policy or plan." *Mooney*, 54 F.3d at 1214 n.8. The proposed class members must also have similar job requirements and similar terms of payment provisions. *Heeg*, 907 F. Supp. 2d at 862

Progress argues that "Plaintiff[s] offer[] no evidence [they are] similarly situated to others outside the Houston market or those employed after 2016 with regard to the performance of their job duties." Specifically, Progress contends that onsite leasing agents today are not similarly situated to onsite leasing agents of a few years ago because technological advances have resulted in present-day onsite leasing agents spending

10

different amounts of time performing their job duties than their counterparts from the past. Progress also claims that onsite leasing agents in various geographic markets spend different amounts of time performing certain tasks. This argument is unpersuasive.

In the present case, although some job duties of onsite leasing agents may have varied over time and at specific geographic locations, the evidence presented at this early stage suggests that all onsite leasing agents performed the same basic tasks and exercised similar job functions. This is reflected by Plaintiffs' declarations stating that onsite leasing agents across the nation were charged with leasing properties to prospective tenants in accordance with the same policies and procedures. Moreover, Plaintiffs have presented evidence that onsite leasing agents across the country were paid in the same manner: on a salary plus commission basis with no overtime pay.

As Plaintiffs readily note, Judge Gregg Costa, while serving as the District Court Judge presiding over the Galveston Division, expressly rejected the same argument Progress makes here concerning the individualized nature of a salesperson's duties. In conditionally certifying a nationwide FLSA collection action consisting of salespersons for a major homebuilding company, Judge Costa held as follows:

> The distinctions among salespersons that KB highlights—e.g., how much time they spend outside the sale office showing homes, how often they engage in promotional activities, how many model homes they show each potential buyer, and whether or not they highlight the neighborhoods' communal amenities to potential buyers—reflect the unsurprising fact that salespersons use different sales tactics and have varying levels of success, but those different tactics do not affect KB's classification that they all fall under the Outside Sales Exemption. Another court has noted the inconsistency of an employer "argu[ing] that they should be permitted to treat all sales representatives as one group for purposes of classifying them as

11

> exempt, but that this Court can only determine the validity of that classification by looking to the specific job duties of each individual sales representative." *Id.; see also Wang v. Chinese Daily News, Inc.*, 231 F.R.D. 602, 613 (C.D. Cal. 2005) ("Defendant cannot, on the one hand, argue that all [plaintiffs] are exempt from overtime wages and, on the other hand, argue that the Court must inquire into the job duties of each [plaintiff] in order to determine whether that individual is exempt.") (quotation marks omitted).

*Edwards v. KB Home*, 2012 U.S. Dist. LEXIS 186984, at *19-20 (S.D. Tex. Sept. 25, 2012). "Just as in *Edwards*, the minor differences between the salespersons' methods of selling homes are not relevant to the *Lusardi* analysis." *McCarragher v. Ryland Grp., Inc.*, No. 3:11–CV–55, 202 WL 4857575, at *5 (S.D. Tex. Oct. 11, 2012). The same analysis applies here.

"Because the global application of an FLSA exemption to a particular job presumes substantial similarities in those employees' duties, conditional certification is commonly granted in cases alleging misclassification." *Edwards*, 2012 U.S. Dist. LEXIS 186984, at *24. Accordingly, Plaintiffs argue that conditional certification is appropriate here because the putative class members are similarly situated—that is, they were all denied overtime pay as a result of Progress's alleged misclassification of them being exempt from overtime pay.

The Court is satisfied that the duties of class members are sufficiently similar for purposes of conditional certification. It is not surprising that onsite leasing agents in separate geographic markets might, as Progress notes, employ different sales methods and spend varied amounts of time performing those tasks. It is also expected that those salespersons who utilize technology often will perform their job functions quite

12

differently than those who abhor technological advances. These variances are to be expected, but they are distinctions without a difference for purposes of the conditional certification analysis. At this stage, the Court finds that Plaintiffs have demonstrated "a reasonable basis for the allegation that a class of similarly situated persons exists" for purposes of conditional certification. *Maynor*, 2008 WL 2220394, at *7. *See also Tice v. AOC Senior Home Health Corp.*, 826 F. Supp. 2d 990, 995–96 (E.D. Tex. 2011) (in order to establish whether members of a proposed FLSA class are similarly situated, the Court assesses whether they "performed the same basic tasks and were subject to the same pay practices"). Accordingly, conditional certification and issuance of notice is warranted.[3]

### 3. Whether the Aggrieved Individuals Want to Opt-In the Lawsuit

As noted above, courts in this District are split on whether a plaintiff seeking conditional certification must establish a third element of the *Lusardi* analysis—that is, showing that others are interested in opting in the lawsuit.

"The strongest argument in support of the third element is that it helps the court balance concerns regarding judicial economy with the desire to avoid the 'stirring up' of litigation through unwarranted solicitation." *Williams*, 2018 WL 1251927, at *2 (citing *Bunker v. PCP For Life, PA*, No. 4:16-CV-2573, 2017 WL 3187610, at *2 (S.D. Tex.

---

[3] Once discovery advances, Progress is free to move for decertification, at which time there is a more rigorous determination as to whether the plaintiffs are similarly situated such that the action should be tried collectively. *Mooney*, 54 F.3d at 1214. There are plenty of examples in which courts have decertified a collective action at this second stage after it had previously approved conditional certification. *See, e.g., Lipnicki v. Meritage Homes Corp.*, No. 3:10–CV–605, 2014 WL 5620603 (S.D. Tex. Nov. 4, 2014).

July 26, 2017)). That justification, however, is overpowered by four reasons to reject the third element:

> First ... this element is not a statutory requirement at this stage. Second, this element has not been required, or even discussed, by any higher court opinion that this court has been able to find or to which the parties have cited. Rather, the Fifth Circuit's discussion of the *Lusardi* approach only requires, at the first stage, that putative class members' claims are sufficiently similar to merit sending notice of the action to possible members of the class. Third, unlike under Rule 23, there is no numerosity requirement in a FLSA class action lawsuit under the *Lusardi* approach. Fourth, this element, requiring evidence of purported class members who are willing to join a class action before an appropriate class is even determined, is dissonant with the Supreme Court's directive that the FLSA be liberally construed to effect its purposes.

*Villarreal v. St. Luke's Episcopal Hosp.*, 751 F. Supp. 2d 902, 916 (S.D. Tex. 2010) (internal citations omitted). This Court concurs and, therefore, joins the growing list of courts in this District that have adopted the two-element approach at the *Lusardi* certification stage. Plaintiffs need not present evidence that other individuals want to join the lawsuit to obtain conditional certification.

That being said, even if Plaintiffs were required to show that other aggrieved individuals want to join the case, the Court believes they have satisfied that burden. Two opt–in plaintiffs have consented to join this lawsuit and that, alone, is sufficient to satisfy the third element of the *Lusardi* test. *See Kibodeaux v. Wood Grp. Prod.*, No. 4:16–CV–3277, 2017 WL 1956738, at *2 (S.D. Tex. May 11, 2017) (one opt-in plaintiff constitutes a "minimal showing" that aggrieved individuals wish to opt-in); *Pacheco v. Aldeeb*, No. 5:14–CV–121–DAE, 2015 WL 1509570 (W.D. Tex. Mar. 31, 2015) (two opt–in plaintiffs attesting to the many current and former employees who would join a lawsuit to

14

recover unpaid overtime wages sufficient to satisfy the interest factor); *Tolentino v. C & J Spec–Rent Servs. Inc.*, 716 F. Supp. 2d 642, 653 (S.D. Tex. 2010) (two opt-in plaintiffs sufficient to demonstrate the existence of other similarly situated employees who wish to opt-in the lawsuit). Moreover, all three Plaintiffs have submitted declarations stating that "[t]here are other Progress Residential onsite leasing agents who would be interested in joining this lawsuit if they are given notice of their rights and an opportunity to join." These declarations are also sufficient to satisfy the third element of the *Lusardi* test. *See Corcione v. Methodist Hospital*, No. 14-CV-160 (LHR), 2014 WL 6388039, at *8 (S.D. Tex. Nov. 14, 2014) (plaintiff met her burden by providing two declarations from putative class members "who expressed their belief that other nurses would be interested in joining this suit" and three opt–in plaintiffs consented to join the suit).

Progress argues that to be entitled to conditional certification Plaintiffs must show some evidence that putative class members outside of Houston are interested in joining this lawsuit. Progress specifically complains that Plaintiffs fail to offer any "evidence whatsoever that *any* individual at *any other* location in *any* of these other markets is interested in joining the suit." This Court is not persuaded by that argument. Even if this Court assumes that Plaintiffs must provide evidence that someone who worked outside of Houston is interested in opting in the case, Plaintiff has done so. The declaration from Carney–Francis submitted in connection with the Motion expressly states that she worked in the Houston and Dallas areas and wants to join the case. Thus, the Court finds that even if the Plaintiffs had to show that aggrieved individuals want to join the lawsuit, the

evidence proffered by Plaintiffs satisfies the lenient conditional certification standard with regard to the third element.

## IV. CONCLUSION

Plaintiffs have made a sufficient showing at this preliminary stage to warrant the issuance of notice, to permit full discovery, and to allow the Court to conduct a more rigorous analysis at the final decertification stage when it has the benefit of more information. As such, Plaintiffs' Motion is GRANTED. Counsel for Plaintiffs and Progress are ordered to confer and agree, if possible, upon the content of proposed notice.

SIGNED at Galveston, Texas, this 3rd day of April, 2018.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE